[Crim. No. 16130. Second Dist., Div. One. Nov. 3, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. SYLVESTER PAYNE, Defendant and Appellant.

**COUNSEL**

Frank P. Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert F. Katz, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—An information charged defendant with robbery (Pen. Code, § 211) and alleged that he was armed with a deadly weapon, an automatic gun, at the time of the commission of the offense and with a concealed deadly weapon (automatic gun) at the time of arrest. He was found guilty of first degree robbery and not to be armed at the time of the commission of the offense but armed at the time of arrest. He appeals from the judgment.

Around noon on September 12, 1967, a salesgirl at Hartfield's store brought defendant to Billy Luck, credit manager, to make a credit application. Luck gave him an application; they stood face to face across the counter from each other. Defendant did not complete the application but asked Luck to take a look at some coats he wanted to purchase at the store's cash desk located in the center of the floor; they walked out on the floor. Luck noticed defendant's hand placed inside a brown paper bag resting on the cash desk; the bag made a thud on the counter as defendant said, "I want you to go back there and get the money" and shoved the bag with his hand in it over the counter; he handed a second bag to Luck. At first Luck thought it might be a joke but after defendant said, "Did you hear me?" and repeated his statement, and a cashier said, "Come on, Mr. Luck, get the money. We are going to get robbed." he complied. Luck walked to the safe about 10 feet away. The cashier saw defendant take a shiny object off the cash desk and place it in his pocket; the object with which defendant had been fiddling flashed when it was taken from the bag. Luck then returned with the money in the paper bag; it consisted of singles, rolls of coins and envelopes containing money and deposit slips bearing the name "Hartfield Store," totaling $3,000. Defendant turned to the door, warned them not to call police and left.

The store detective, Oscar Dunbar, was next door drinking a coke; Mrs. Jordan, a window trimmer, came in and told him something was happening at Hartfield's; in front of the store he found Luck who told him that "the man is going around the corner that just robbed the store" and Mrs. Jordan yelled, "He is just going around the corner. He is just going around the

corner, the man with the two bags." He ran to the corner and saw defendant, six to eight feet away, carrying two brown paper bags "walking fast" to the parking lot behind the store; defendant was the only person on the street. Told defendant had a gun, Dunbar followed him about 50 yards into the parking lot and when he was in the back of the lot, pointed his weapon at defendant, yelled, "Police Officers. Halt," and ordered him to raise his hands slowly, turn, extend his hands in front and give the bag to the store manager who had just arrived. Dunbar's partner came and together they frisked defendant; in defendant's right trouser pocket he found a loaded automatic gun. Defendant was escorted back to the store and the police were called. Upstairs Dunbar examined the contents of the bags and found them to contain money, checks and bank receipts which bore the name "Hartfield Store" signed by store employees.

Defendant neither testified nor offered a defense.

Appellant's sole contention is that the evidence is insufficient to support a finding of probable cause to arrest him thus the automatic pistol and the two paper bags containing the money were illegally seized as incident to an unlawful arrest. He argues that Dunbar did not see him leave or near the store and he was first observed by him a block away on another street, and Dunbar had no particular description of the robber other than "a man carrying two bags" and relied upon what others told him in making the arrest.

At the outset of the trial during the direct examination of Mr. Luck, the prosecutor proceeded to question him concerning what the store employees told Dunbar when he arrived directly after the robbery; defense counsel objected and the prosecutor stated, "There is no issue on probable cause, your Honor. I won't go into this. You will stipulate there is no issue on probable cause, counsel?" and the defense counsel replied, "No issue on probable cause." Relying upon the stipulation, the prosecutor abandoned further questions concerning the matter. ■ In light of this stipulation, which eliminated the issue of probable cause from the trial and foreclosed the offering of further proof thereon, appellant is now in no position to urge the issue of probable cause on appeal. To permit appellant to raise it now under circumstances where further examination of witnesses at trial might have produced further proof on the issue is to allow him to gamble on the results of the trial while inviting error. Such tactics are not permitted. (*People* v. *Harris,* 274 Cal.App.2d 826, 831 [79 Cal.Rptr. 352].) Moreover, no objection was made when Dunbar identified the gun (Exh. 1) as the weapon he removed from defendant's pocket upon frisking

him in the parking lot, or the envelope containing various items (Exhs. 2, 2-A) found in one of the bags defendant was carrying; nor was objection interposed to the offer of the gun and envelope in evidence. ■ "In the absence of an appropriate objection in the trial court, it cannot be successfully contended on appeal that it was error to permit the introduction of evidence because it was illegally obtained. In the face of a proper objection the prosecution might have been able to offer additional evidence on the issue raised by the objection. (See *People* v. *Ibarra,* 60 Cal.2d 460, 462-463 [34 Cal.Rptr. 863, 386 P.2d 487].)" (*People* v. *Davis,* 265 Cal. App.2d 341, 346 [71 Cal.Rptr. 242].)

■ In any event, the Fourth Amendment's prohibition against unreasonable search and seizure does not apply to searches by private individuals unless they are participating in a joint activity or in cooperation with law enforcement officers. (*Stapleton* v. *Superior Court,* 70 Cal.2d 97, 100-103 [73 Cal.Rptr. 575, 447 P.2d 967]; *People* v. *Garber,* 275 Cal.App. 2d 119, 126-127 [80 Cal.Rptr. 214].) Dunbar was a private detective employed by and for Hartfield store; he was not a member of the police or sheriff's department or a state agent of any kind. Absent is any suggestion that Dunbar's activities were undertaken in cooperation with any law enforcement officer, and there is no evidence of any government participation. The police officers were not called until after Dunbar had apprehended defendant, taken the gun from his pocket and returned him to the store; they did not enter the case until they arrived at which time defendant, the gun and the contents of the bags were turned over to them by Dunbar.

■ The judgment recites that defendant was found guilty of robbery, first degree, and found to be armed at the time of his arrest but not at the time of the commission of the offense. However, Penal Code, section 211a, provides that all robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree; all other kinds of robbery are of the second degree. Absent from the record herein is any evidence that the robbery was perpetrated by torture, and the trial judge specifically found that defendant was not armed with a deadly weapon at the time of the commission of the offense.[1] But when the judge was asked the degree of the robbery, he responded, "It will be first

---

[1]At the conclusion of the trial, after a resumé of the evidence and a consideration of certain conflicts in the evidence relative to whether defendant displayed a gun at the time of the robbery, the trial judge said, "The Court is not satisfied, beyond a reasonable doubt as to the allegation that at the particular time, because of that, that he was armed with a deadly weapon.

"The Court is satisfied as to the secondary allegation that at the time he was arrested, he was armed with a deadly weapon.

"Otherwise, the defendant is found guilty as charged."

degree." It is readily apparent that under the circumstances the judge inadvertently fixed the degree of the robbery as first degree." In fact, this is borne out by his statements[2] made upon considering a diagnostic study and recommendations of the California Department of Corrections under section 1203.03, Penal Code, denying probation and sentencing defendant; they reveal that the judge was under the impression he had found defendant guilty of robbery, second degree. Thus, in the light of the foregoing and the record before us, we are of the opinion that the robbery should be reduced from first degree to second degree to conform to the evidence and the ultimate understanding of the trial judge when he pronounced judgment and sentence.

The judgment is modified by striking the word "first" from, and substituting therefor the word "second" in, the following sentence, "Whereas the said defendant having been duly found guilty in this court of the crime of Robbery (Sec. 211 PC), a felony, as charged in the information, which the Court found to be Robbery of the first degree and that defendant was armed at the time of arrest but not armed at the time of commission." The judgment in all other respects is affirmed.

Wood, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1969.

---

[2]"There was a question in the Court's mind as to the disclosure again, et cetera, and the Court did find him guilty in the 2nd, which I am aware now as to the minimum time of the sentence and from the report, which is very thorough, I don't think that this young man is going to stay there long anyway.

"I think for his best interest, though, the Court wants him to have the same services that he has been having in the time he has been in custody, especially at the diagnostic center.

". . . . . . . . . . . . . . . . . .

"But the Court doesn't feel that just doing time in the county jail is the answer, under the circumstances." Defense counsel then conferred with defendant who told him he would prefer to spend his time in the county jail. The court replied: "It may be less and it may be a freckle more, as far as the state prison is concerned because of the degree and because of his excellent report. But the Court doesn't feel I'm doing the defendant or anybody any favor by putting him in the county jail, even if it's for a year. The facilities there are not what the Court thinks this young man needs, and I'd rather have him bettering himself."