[Crim. No. 20284. May 24, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
VIRGINIA ALVINIA ZELINSKI, Defendant and Appellant.

**COUNSEL**

Paul Halvonik, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, Aurelio Munoz and Barbara L. Miner, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and William R. Pounders, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MANUEL, J.**—Virginia Zelinski was charged with unlawful possession of a controlled substance, heroin (Health & Saf. Code, § 11350). A motion to suppress evidence pursuant to Penal Code section 1538.5 was denied. She entered a plea of guilty and appeals. (Pen. Code, § 1538.5, subd. (m).) We reverse.

On March 21, 1976, Bruce Moore, a store detective employed by Zody's Department Store, observed defendant place a blouse into her

purse. Moore alerted Ann O'Connor, another Zody detective, and the two thereafter observed defendant select a pair of sandals, which she put on her feet, and a hat, which she put on her head. Defendant also took a straw bag into which she placed her purse. Defendant then selected and paid for a pair of blue shoes and left the store.

Detectives Moore and O'Connor stopped defendant outside the store. Moore placed defendant under arrest for violation of Penal Code section 484 (theft) and asked her to accompany him and detective O'Connor into the store. Defendant was taken by O'Connor to the security office where Pat Forrest, another female store detective, conducted a routine "cursory search in case of weapons" on the person of defendant.

Moore testified that he reentered the security office when the search of defendant's person was completed, opened defendant's purse to retrieve the blouse taken from Zody's, and removed the blouse and a pill vial that lay on top of the blouse.[1] Moore examined the vial, removed a balloon from the bottle, examined the fine powdery substance contained in the balloon,[2] and set the vial and balloon on the security office desk to await the police who had been called.

Detective O'Connor, who testified to the search of defendant's person by Forrest,[3] was initially confused as to whether the pill vial containing the balloon had been taken from the defendant's purse or from her brassiere. On cross-examination, O'Connor was certain that she saw Forrest taking it from defendant's brassiere. According to O'Connor, the pill bottle was placed on the security office desk where detective Moore shortly thereafter opened it and examined the powdery substance in the balloon. Later the police took custody of the vial and defendant was thereafter charged with unlawful possession of heroin.

Defendant's appeal involves two questions—(1) whether store detectives Moore, O'Connor and Forrest exceeded the permissible scope of search incident to the arrest, and (2) if they did, whether the evidence thus obtained should be excluded as violative of defendant's

---

[1] There is some evidence that Moore commenced search of the purse prior to the search of defendant's person by Forrest.

[2] Moore, who had worked in undercover narcotics operations with the police and private agencies, suspected the substance was heroin.

[3] Forrest did not testify.

rights under federal or state Constitutions. We have concluded that the narcotics evidence was obtained by unlawful search and that the constitutional prohibition against unreasonable search and seizure affords protection against the unlawful intrusive conduct of these private security personnel.

■ Store detectives and security guards are retained primarily to protect their employer's interest in property. They have no more powers to enforce the law than other private persons. (See *Private Police in California: A Legislative Proposal* (1975) 5 Golden Gate L.Rev. 115, 129-134; cf. *Stapleton* v. *Superior Court* (1968) 70 Cal.2d 97, 100-101, fn. 3 [73 Cal.Rptr. 575, 447 P.2d 967].) Like all private persons, security employees can arrest or detain an offender (Pen. Code, § 837) and search for weapons (Pen. Code, § 846) before taking the offender to a magistrate or delivering him to a peace officer (Pen. Code, §§ 847, 849).[4] Store personnel Moore and O'Connor were acting under this statutory authority when they arrested defendant and took her into custody for leaving the store with stolen merchandise.

■ Merchants have traditionally had the right to restrain and detain shoplifters. At the time of the incident at Zody's, merchants were protected from civil liability for false arrest or false imprisonment in their reasonable efforts to detain shoplifters by a common law privilege that permitted detention for a reasonable time for investigation in a reasonable manner of any person whom the merchant had probable cause to believe had unlawfully taken or attempted to take merchandise from the premises. (*Collyer* v. *S. H. Kress & Co.* (1936) 5 Cal.2d 175 [54 P.2d 20].)

---

[4]Insofar as applicable to private persons, the statutes provide: Section 837: "A private person may arrest another: 1. For a public offense committed or attempted in his presence. [¶] 2. When the person arrested has committed a felony, although not in his presence. [¶] 3. When a felony has been in fact committed and he has reasonable cause for believing the person arrested to have committed it."

Section 846: "Any person making an arrest may take from the person arrested all offensive weapons which he may have about his person, and must deliver them to the magistrate before whom he is taken."

Section 847: "A private person who has arrested another for the commission of a public offense must, without unnecessary delay, take the person arrested before a magistrate, or deliver him to a peace officer. . . ."

Section 849: "(a) When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate."

That privilege has since been enacted into statute as subdivision (e) of Penal Code section 490.5.[5]

Thus, pursuant to the Penal Code or the civil common law privilege, store personnel Moore and O'Connor had authority to arrest or detain defendant. The question remains, however, whether they exceeded their authority in their subsequent search for and seizure of evidence.

■ The permissible scope of search incident to a citizen's arrest is set out in *People* v. *Sandoval* (1966) 65 Cal.2d 303, 311, footnote 5 [54 Cal.Rptr. 123, 419 P.2d 187]: "A citizen effecting such an arrest is authorized only to 'take from the person arrested all offensive weapons which he may have about his person' (Pen. Code, § 846), not to conduct a search for contraband 'incidental' to the arrest, or to seize such contraband upon recovering it. [Citation.] We reject the suggestion of *People* v. *Alvarado* (1962) 208 Cal.App.2d 629, 631 [25 Cal.Rptr. 437], that the search of one private individual or his premises by another is lawful simply because 'incidental' to a lawful citizen's arrest." (See also *People* v. *Cheatham* (1968) 263 Cal.App.2d 458, 462, fn. 2 [69 Cal.Rptr. 679]; *People* v. *Sjosten* (1968) 262 Cal.App.2d 539 [68 Cal.Rptr. 832]; *People* v. *Martin* (1964) 225 Cal.App.2d 91, 94 [36 Cal.Rptr. 924].)[6] The rationale behind the rule is that, absent statutory authorization, private citizens are not and should not be permitted to take property from other private citizens.[7]

■ The limits of the merchant's authority to search is now expressly stated in Penal Code section 490.5. Paragraph (3) of subdivision (e) provides that "During the period of detention any items which a

---

[5]Subdivision (e) became effective on January 1, 1977. The Legislature made clear that the provisions of subdivision (e) of section 490.5 "do not constitute a change in, but are declaratory of, the existing law, and such provisions shall not be interpreted to amend or modify Sections 837, 847, and 849 of the Penal Code." (Stats. 1976, ch. 1131, § 3, p. 5049.)

[6]In *People* v. *Bush* (1974) 37 Cal.App.3d 952 [112 Cal.Rptr. 770], seizure of a baggie of marijuana by an offduty policeman who effected an arrest was upheld as a seizure of contraband in plain view. Because the officer in *Bush* was acting outside of his jurisdiction, the court was compelled to treat the arrest as a citizen's arrest. Insofar as *Bush* suggests that the permissible scope of search incident to a citizen's arrest goes beyond the right to disarm the offender, as provided in Penal Code section 846, it is disapproved.

[7]Contrast the extensive decisional law which has expanded the scope of permissible search by a police officer as an incident to arrest despite lack of statutory authorization. (See *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]; *Preston* v. *U.S.* (1964) 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881]; *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 813 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Norman* (1975) 14 Cal.3d 929 [123 Cal.Rptr. 109, 538 P.2d 237].)

merchant has reasonable cause to believe are unlawfully taken from his premises *and* which are in plain view may be examined by the merchant for the purposes of ascertaining the ownership thereof." (Italics added.) Neither the statute nor the privilege which it codified purport to give to the merchant or his employees the authority to search.

In the present case, instead of holding defendant and her handbag until the arrival of a peace officer who may have been authorized to search, the employees instituted a search to recover goods that were not in plain view. Such intrusion into defendant's person and effects was not authorized as incident to a citizen's arrest pursuant to section 837 of the Penal Code (*Sandoval, supra,* 65 Cal.2d at p. 311, fn. 5), or pursuant to the merchant's privilege subsequently codified in subdivision (e) of section 490.5. It was unnecessary to achieve the employees' reasonable concerns of assuring that defendant carried no weapons[8] and of preventing loss of store property. As a matter of law, therefore, the fruits of that search were illegally obtained.

The People contend that the evidence is nevertheless admissible because the search and seizure were made by private persons. They urge that *Burdeau* v. *McDowell* (1921) 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159], holding that Fourth Amendment proscriptions against unreasonable searches and seizures do not apply to private conduct, is still good law and controlling. (See *People* v. *Randazzo* (1963) 220 Cal.App.2d 768, 770-775 [34 Cal.Rptr. 65]; *People* v. *Superior Court (Smith)* (1969) 70 Cal.2d 123, 128-129 [74 Cal.Rptr. 294, 449 P.2d 230], [". . . acquisition of property by a private citizen from another person cannot be deemed reasonable or unreasonable . . . "]; cf. *Stapleton* v. *Superior Court, supra,* 70 Cal.2d at p. 100, fn. 2.)

Defendant contends, on the other hand, that only by applying the exclusionary rule to all searches conducted by store detectives and other

[8]The record discloses no specific facts or circumstances which warranted a search for weapons. According to detective Moore, a "cursory" and routine search for weapons was made because weapons had been found on other occasions. We express no opinion as to the validity of a routine search for weapons after a petty theft (see *People* v. *Brisendine* (1975) 13 Cal.3d 528, 536-538 [119 Cal.Rptr. 315, 531 P.2d 1099]), and the People do not rely upon the weapons search as justification for seizure of the narcotics. But, even if we concede the right to search for weapons, the detectives were not justified in seizing and examining the contents of an opaque bottle in the course of such a limited search. (*Brisendine, supra,* 13 Cal.3d at p. 543.) A container of pills carried on an individual's person or in his immediate effects does not ordinarily feel like a weapon (*People* v. *Mosher* (1969) 1 Cal.3d 379, 394 [82 Cal.Rptr. 379, 461 P.2d 659]), and the person conducting the search is not entitled to engage in "fanciful speculation" as to what the item might be (*People* v. *Collins* (1970) 1 Cal.3d 658, 663 [83 Cal.Rptr. 179, 463 P.2d 403]).

private security personnel can freedoms embodied in the Fourth Amendment of the federal Constitution and article I, section 13 of the state Constitution be protected from the abuses and dangers inherent in the growth of private security activities.

More than a decade ago we expressed concern that searches by private security forces can involve a "particularly serious threat to privacy" (*Stapleton, supra*, 70 Cal.2d at pp. 100-101, fn. 3); in *Stapleton* and later in *Dyas* v. *Superior Court* (1974) 11 Cal.3d 628, 633 [114 Cal.Rptr. 114, 522 P.2d 674], we left open the question whether searches by such private individuals should be held subject to the constitutional proscriptions. We now address the problem.

Article I, section 13 of the California Constitution provides in part that: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches may not be violated. . . ." Although the constitutional provision contains no language indicating that the "security" protected by the provision is limited to security from governmental searches or seizures, California cases have generally interpreted this provision as primarily intended as a protection of the people against such governmentally initiated or governmentally directed intrusions. The exclusionary rule, fashioned to implement the rights secured by the constitutional provision, has therefore been applied to exclude evidence illegally obtained by private citizens only where it served the purpose of the exclusionary rule in restraining abuses by the police of their statutory powers. (*Stapleton* v. *Superior Court, supra,* 70 Cal.2d 97; *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]; *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; cf. *People* v. *Payne* (1969) 1 Cal.App.3d 361 [81 Cal.Rptr. 635]; *People* v. *Randazzo, supra,* 220 Cal.App.2d 768; *People* v. *Cheatham, supra,* 263 Cal.App.2d 458, 461-462; cf. *People* v. *Millard* (1971) 15 Cal.App.3d 759, 761-762 [93 Cal.Rptr. 402]; *People* v. *Superior Court (Smith), supra,* 70 Cal.2d 123; *People* v. *Mangiefico* (1972) 25 Cal.App.3d 1041, 1047-1048 [102 Cal.Rptr. 449].)

We have recognized that private security personnel, like police, have the authority to detain suspects, conduct investigations, and make arrests. They are not police, however, and we have refused to accord them the special privileges and protections enjoyed by official police officers. (See *People* v. *Corey* (1978) 21 Cal.3d 738 [147 Cal.Rptr. 639, 581 P.2d 644].) We have excluded the fruits of their illegal investigations only when they were acting in concert with the police or when the police were standing

silently by. (*Stapleton, supra,* 70 Cal.2d at p. 103.) We are mindful, however, of the increasing reliance placed upon private security personnel by local law enforcement authorities for the prevention of crime and enforcement of the criminal law and the increasing threat to privacy rights posed thereby. Since *Stapleton* was decided, the private security industry has grown tremendously, and, from all indications, the number of private security personnel continues to increase today. A recent report prepared by the Private Security Advisory Council to the United States Department of Justice describes this phenomenon in the following terms: "A vast army of workers are employed in local, state and federal government to prevent crime and to deal with criminal activity. Generally thought of as the country's major crime prevention force are the more than 40,000 public law enforcement agencies with their 475,000 employees. While they constitute the . . . most visible component of the criminal justice system, another group has been fast rising in both numbers and responsibility in the area of crime prevention. With a rate of increase exceeding even that of the public police, the private security sector has become the largest single group in the country engaged in the prevention of crime." (Private Security Adv. Coun. to U.S. Dept. of Justice, LEAA, Report on the Regulation of Private Security Services (1976) p. 1.)

Realistically, therefore, we recognize that in our state today illegal conduct of privately employed security personnel poses a threat to privacy rights of Californians that is comparable to that which may be posed by the unlawful conduct of police officers. (See generally, *Private Police in California—A Legislative Proposal, supra,* 5 Golden Gate L.Rev. 115; Bassiouni, Citizen's Arrest: The Law of Arrest, Search and Seizure for Private Citizens and Private Police (1977) p. 72.) Moreover, the application of the exclusionary rule can be expected to have a deterrent effect on such unlawful search and seizure practices since private security personnel, unlike ordinary private citizens, may regularly perform such quasi-law enforcement activities in the course of their employment. (See *Seizures by Private Parties: Exclusion in Criminal Cases* (1967) 19 Stan. L.Rev. 608, 614-615.)

In the instant case, however, we need not, and do not, decide whether the constitutional constraints of article I, section 13, apply to all of the varied activities of private security personnel, for here the store security forces did not act in a purely private capacity but rather were fulfilling a public function in bringing violators of the law to public justice. For reasons hereinafter expressed, we conclude that under such circum-

stances, i.e., when private security personnel conduct an illegal search or seizure while engaged in a statutorily authorized citizen's arrest and detention of a person in aid of law enforcement authorities, the constitutional proscriptions of article I, section 13 are applicable.

Although past cases have not applied the constitutional restrictions to purely private searches, we have recognized that some minimal official participation or encouragement may bring private action within the constitutional constraints on state action. (*Stapleton* v. *Superior Court,* *supra,* 70 Cal.2d 97, 101.) ■ As noted by the United States Supreme Court in *United States* v. *Price* (1965) 383 U.S. 787 [16 L.Ed.2d 267, 86 S.Ct. 1152], a person does not need to be an officer of the state to act under color of law and therefore be responsible, along with such officers, for actions prohibited to state officials when such actions are engaged in under color of law. (*Id.,* p. 794, and fn. 7 thereunder [16 L.Ed.2d at p. 272]; cf. *Burton* v. *Wilminton Pkg. Auth.* (1961) 365 U.S. 715, 725 [6 L.Ed.2d 45, 52, 81 S.Ct. 856]; *Weeks* v. *U.S.* (1914) 232 U.S. 383, 398 [58 L.Ed. 652, 657, 34 S.Ct. 341]; *Marsh* v. *Alabama* (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276].)

■ In the instant case, the store employees arrested defendant pursuant to the authorization contained in Penal Code section 837, and the search which yielded the narcotics was conducted incident to that arrest. Their acts, engaged in pursuant to the statute, were not those of a private citizen acting in a purely private capacity. Although the search exceeded lawful authority, it was nevertheless an integral part of the exercise of sovereignty allowed by the state to private citizens. In arresting the offender, the store employees were utilizing the coercive power[9] of the state to further a state interest. Had the security guards sought only the vindication of the merchant's private interests they would have simply exercised self-help and demanded the return of the stolen merchandise. Upon satisfaction of the merchant's interests, the offender would have been released. By holding defendant for criminal process and searching her, they went beyond their employer's private interests.

■■■■ Persons so acting should be subject to the constitutional proscriptions that secure an individual's right to privacy, for their actions are taken pursuant to statutory authority to promote a state interest in

[9]See Kelsen, General Theory of Law and State (Harvard University Press, 1949) pages 18-20, 50-51.

bringing offenders to public accounting.[10] Unrestrained, such action would subvert state authority in defiance of its established limits. It would destroy the protection those carefully defined limits were intended to afford to everyone, the guilty and innocent alike. It would afford de facto authorizations for searches and seizures incident to arrests or detentions made by private individuals that even peace officers are not authorized to make. Accordingly, we hold that in any case where private security personnel assert the power of the state to make an arrest or to detain another person for transfer to custody of the state, the state involvement is sufficient for the court to enforce the proper exercise of that power (cf. *People* v. *Haydel* (1974) 12 Cal.3d 190, 194 [115 Cal.Rptr. 394, 524 P.2d 866]) by excluding the fruits of illegal abuse thereof. We hold that exclusion of the illegally seized evidence is required by article I, section 13 of the California Constitution.

The judgment (order granting probation) is reversed.

Tobriner, J., Mosk, J., Richardson, J., and Newman, J., concurred.

Bird, C. J., concurred in the result.

**CLARK, J.**—I dissent for the reasons expressed in my dissenting opinion in *Dyas* v. *Superior Court* (1974) 11 Cal.3d 628, 637-638 [114 Cal.Rptr. 114, 522 P.2d 674]. The judgment should be affirmed.

Respondent's petition for a rehearing was denied June 27, 1979. Clark, J., was of the opinion that the petition should be granted.

---

[10]We distinguish action taken pursuant to statutory authority which promotes a state interest (here, enforcement of the penal laws) from action taken pursuant to statute which merely establishes the procedure for regulation of private interests. (See, for example, *Garfinkle* v. *Superior Court* (1978) 21 Cal.3d 268 [146 Cal.Rptr. 208, 578 P.2d 925].) Thus, when a merchant exercises his common law privilege (now embodied in Pen. Code, § 490.5), to detain a person suspected of taking merchandise, the merchant is exercising a purely private and self-interested right to protect his property. His conduct does not assume the color of law until he formally arrests the suspected thief, as any citizen is empowered to do (Pen. Code, § 837), or, alternatively, continues the detention for delivery of the suspect to a peace officer who may arrest. Detention and search of a shoplifter, followed by release by the merchant, brings into play no state interest that concerns us here.