[Crim. No. 36745. Second Dist., Div. One. Sept. 11, 1980.]

In re BRYAN S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BRYAN S., Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, William Wesley Patton and Michael Tanaka, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LILLIE, J.—The minor appeals from orders sustaining two separate petitions alleging burglary (second degree), a felony, and receiving stolen

property,[1] a misdemeanor, respectively, and committing him to camp placement. This appeal relates only to the burglary petition.

Around 4:30 p.m. Mrs. Alig, a neighbor of Mr. and Mrs. Gould who had locked and left their house sometime before, observed three boys in the Gould's driveway leave their bicycles, walk up the driveway and disappear; when they did not reappear, she and her husband went over to see if the Goulds, who were elderly, were okay; Mr. Alig knocked on the door; no one responded but noises were heard coming from within the house, then Mrs. Alig heard a crashing sound from the north side of the house and saw two boys run toward them; asked what they were doing, the boys said they were waiting for a friend who had gone into the house to use the bathroom; the two boys picked up their bicycles and fled; Mrs. Alig left to call police.

While waiting for his wife's return, Mr. Alig observed the minor come out of the front (french) doors of the Gould house; he asked the minor what he was doing, and the minor said he had to go to the bathroom; Alig conversed with him, then asked for identification; the minor showed him a Fedco card; sticking out of the minor's shorts in plain sight was a purse similar to a tobacco pouch; he asked the minor what it was (he did not ask to see it), the minor said "That's mine" and handed it to Alig who unzippered it, looked in and saw some change; he handed it back to the minor; after talking with him, he asked the minor to stay for the police, but he rode away on his bicycle.

A window in the Gould house had been broken and opened; Gould's tobacco pouch containing some coins was missing from a desk drawer.

Appellant contends that the trial court deprived him of his right to have illegally obtained evidence suppressed when it precluded him from further questioning Mr. Alig on cross-examination concerning details of his observations of the pouch. In denying the minor "the entire course of questioning in this regard," the court ruled that Mr. Alig, a private citizen, was not subject to constitutional search and seizure provisions thus the inquiry was to irrelevant matters.

---

[1]The receiving stolen property petition, not here involved, relates to a stolen bicycle. On August 30, the minor was at the police station attempting to help a friend recover his bicycle and in conversation with Officer Patton, told her that his bicycle then outside the station had been "ripped off" and he knew from the seller it had been stolen before he paid $25 for it. The bicycle had been stolen three months before, on May 31.

■ "The provisions prohibiting unreasonable searches and seizures in both the federal and California Constitutions apply only to conduct of the government and its agents, not that of private individuals. (*People* v. *McKinnon* 7 Cal.3d 899, 911-912 [103 Cal.Rptr. 897, 500 P.2d 1097]; see *People* v. *Superior Court (Smith)*, 70 Cal.2d 123, 128-129 [74 Cal.Rptr. 294, 449 P.2d 230].)" (*People* v. *Sahagun* (1979) 89 Cal.App.3d 1, 19 [152 Cal.Rptr. 233].) ■ The exclusionary rule does not apply to evidence obtained in a search conducted by a person who is truly a private citizen. (*Dyas* v. *Superior Court* (1974) 11 Cal.3d 628, 632 [114 Cal.Rptr. 114, 522 P.2d 674].) There is no evidence in the record before us that Mr. Alig acted as an agent of the government or acted on behalf of or in cooperation with or for any governmental agency when he talked to the minor and observed the pouch and its contents.[2] But the record does clearly demonstrate that Alig acted solely as a private citizen and concerned neighbor who was suspicious of the minor's exit from Gould's house and in the Goulds' absence tried to protect their property. Thus it appears that any cross-examination of Alig relating to the pouch and its contents for the purpose of raising a search and seizure issue would elicit irrelevant matters.

Appellant relies upon *People* v. *Zelinski* (1979) 24 Cal.3d 357 [155 Cal.Rptr. 575, 594 P.2d 1000], and cites to our attention *People* v. *North* (Cal.App.) (Crim. 19393) which, he says, recently held *Zelinski* applicable to searches by citizens other than security guards. However, the *North* opinion has been vacated by rehearing granted by this court on March 14, 1980.

In *People* v. *Zelinski* (1979) 24 Cal.3d 357 [155 Cal.Rptr. 575, 594 P.2d 1000], private security personnel working as store detectives observed defendant place a blouse in her purse; outside of the store they arrested her; they returned her to the store to await police, and in the security office conducted a routine search for weapons which led to the discovery of narcotics. (Pp. 360-361.) The court concluded "that the

---

[2]The pouch and coins did not figure in the minor's arrest. At the time Mr. Alig saw the contents of the pouch, he assumed, as stated by the minor, that it belonged to him, and he was unaware that it belonged to anyone else. He did not then know that Mr. Gould had such a pouch or that it had come from the Goulds' house. He simply gave no importance to the pouch; he "didn't pay too much attention how much or anything like that" and "didn't go into" the amount of coins in it. He did not speak to the Goulds that day because they returned late at night but when he did he did not mention the pouch because he did not believe it was important at that time. Neither he nor Mrs. Alig told the deputies about the pouch before the arrest. Deputy Handley, who stopped the minor on his bicycle and patted him down for weapons, recalled feeling a wallet and a few coins but did not look at it.

narcotics evidence was obtained by unlawful search and that the constitutional prohibition against unreasonable search and seizure affords protection against the unlawful intrusive conduct of these private security personnel." (P. 362.) To be sure there is language in *Zelinski* taken out of context that seems to support appellant's position, but the rationale in *Zelinski* applies only to private security personnel, and no authority cited to us extends it to ordinary citizens acting in a purely private capacity.

*Zelinski* expressly recognized the difference between the activities of security personnel and those of ordinary private citizens. Alig was a private citizen. His sole concern was to protect his elderly neighbors and their interests. In no manner was he fulfilling any public function in his actions toward the minor. The store detectives arrested and detained Zelinski and conducted a search incident to that arrest. They acted under the authority of the Penal Code and, although retained primarily to enforce their employer's interest in property, they "did not act in a purely private capacity but rather were fulfilling a public function in bringing violators of the law to public justice." The Supreme Court concluded, "that under such circumstances, i.e., when private security personnel conduct an illegal search or seizure while engaged in a statutorily authorized citizen's arrest and detention of a person in aid of law enforcement authorities, the constitutional proscriptions of article I, section 13 are applicable." (Pp. 366-367.)

The Supreme Court sought to meet the threat to private rights presented by a fast developing private security industry and rapidly growing private security personnel who, like police, have the authority to detain suspects, conduct investigations and make arrests and who is increasingly relied upon by local law enforcement agencies for the prevention of crime and enforcement of criminal law. "Realistically, therefore, we recognize that in our state today illegal conduct of privately employed security personnel poses a threat to privacy rights of Californians that is comparable to that which may be posed by the unlawful conduct of police officers. [Citations.] Moreover, the application of the exclusionary rule can be expected to have a deterrent effect on such unlawful search and seizure practices since private security personnel, *unlike ordinary private citizens*, may regularly perform such quasi-law enforcement activities in the course of their employment. [Citation.]" (P. 366, italics added.) There is no aura of "unlawful search and seizure practices" emanating from Alig's actions toward the

minor. "The Supreme Court's reason for the new rule [*Zelinski*] is deterrence of illegal security guard conduct." (*People* v. *Superior Court* (*Harris*) (1979) 100 Cal.App.3d 386, 389 [160 Cal.Rptr. 880], fn. omitted), but suppression of evidence of the pouch and its contents would hardly deter unlawful police or unlawful private security personnel conduct. The application of the exclusionary rule here would serve no reasonable purpose. Further, the Supreme Court expressly excluded from the ambit of the exclusionary rule the conduct of "ordinary private citizens" such as Alig. It must be conceded that Alig is not employed to secure or protect anyone or anything, and that he does not engage in unlawful search and seizure "practices" or "regularly perform" any activities or any "such quasi-law enforcement activities" as are inherent in the work of store detectives and security guards. Although a private citizen may detain one suspected of criminal activity until arrival of police, it is obvious he does not perform such activities on a regular basis.

As "a private citizen acting in a purely private capacity," none of Alig's activities were "under color of law" nor was he "utilizing the coercive power of the state to further a state interest," as in *Zelinski* (p. 367, fn. omitted). Whereas the store detectives in arresting defendant, detaining her for transfer to the state authorities for criminal process and searching her were invoking coercive state power, Alig asserted none and relied on no state authority in questioning the minor and examining the pouch voluntarily handed to him by the minor. Nor could the minor have been led to believe Alig was acting under any official authority, in fact, when he asked the minor to remain for the police, he rode off on his bicycle.

While the store detectives were fulfilling a public function in bringing violators of the law to public justice in *Zelinski*, Alig acted only to protect his neighbors and their home. He neither arrested the minor nor detained him for transfer to state custody. The minor was free to leave and he did so. The Supreme Court's holding "that in any case where private security personnel assert the power of the state to make an arrest or to detain another person for transfer to custody of the state, the state involvement is sufficient for the court to enforce the proper exercise of that power [citation] by excluding the fruits of illegal abuse thereof" (p. 368), simply does not apply to Alig.

Finally, application of the exclusionary rule to the facts herein would contravene public policy. Under circumstances existing today is it not

desirable for ordinary private citizens to be alert to possible criminal activities in their own neighborhoods? Is this not the kind of cooperation law enforcement agencies all over the country are urging for the mutual protection of citizens in their homes? To restrain them in the manner appellant seeks here would tend to encourage public indifference toward discovery and prevention of crime.

The orders are affirmed.

Title, J.,* concurred.

**JEFFERSON (Bernard), Acting P. J.†—I dissent.**

The majority rejects the minor's contention that the trial court erred in precluding the minor from further questioning of Mr. Alig on cross-examination concerning details of the latter's observations of the pouch which was in the minor's possession. It is the minor's contention that the trial court's ruling deprived him of his right to have illegally obtained evidence suppressed. The trial court based its ruling upon the proposition that Mr. Alig was a private citizen and any search of the minor's person by him would not subject the minor to an unconstitutional search or seizure; that the cross-examination of Mr. Alig was thus on irrelevant matters.

I disagree with the majority in its holding that the trial court ruled correctly in declaring *irrelevant* the cross-examination of Mr. Alig which was sought by the minor. Certainly several cases have stated that the federal and state constitutional provisions against unreasonable searches and seizures apply only to conduct of the government and its agents and not to the conduct of private individuals. (See, e.g., *People* v. *McKinnon* (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097]; *Dyas* v. *Superior Court* (1974) 11 Cal.3d 628 [114 Cal.Rptr. 114, 522 P.2d 674]; and *People* v. *Sahagun* (1979) 89 Cal.App.3d 1 [152 Cal.Rptr. 233].)

But it is also abundantly clear that a person being searched by a private individual is entitled to the protection of the constitutional provisions against unreasonable searches and seizures if the private individual doing the search has certain connections or a nexus with

*Assigned by the Chairperson of the Judicial Council.

†Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

government personnel. This is the substance of the holding of *People* v. *Zelinski* (1979) 24 Cal.3d 357 [155 Cal.Rptr. 575, 594 P.2d 1000].

The *Zelinski* court upheld the right of a defendant to be free from a search by privately employed security personnel. In *Zelinski*, the search of defendant was performed by security personnel of a department store. In holding that the search violated defendant's constitutional rights against unreasonable search and seizure, the *Zelinski* court emphasized that the store's security forces were not acting in a purely private capacity "but rather were fulfilling a public function in bringing violators of the law to public justice." (*Zelinski, supra*, 24 Cal.3d 357, 366.) One of the reasons which the *Zelinski* court set forth for its decision was "that in our state today illegal conduct of privately employed security personnel poses a threat to *privacy rights* of Californians that is comparable to that which may be posed by the unlawful conduct of police officers." (*Id.* at p. 366.) (Italics added.)

I agree with the majority that the *Zelinski* case cannot be construed as a holding that a defendant has a constitutional right to be free from a search by a private individual under any and all circumstances. The essential rationale of *Zelinski* is that the department store security personnel, although private individuals, were acting in the *interests* of the *state* in conducting a search of the defendant in that case. It was this action by private citizens in the interests of the state that brought into play the constitutional provisions against unreasonable search and seizure.

In *Zelinski*, the court observed that, "[a]lthough past cases have not applied the constitutional restrictions to purely private searches, we have recognized that some minimal official participation or encouragement may bring private action within the constitutional constraints on state action." (*Zelinski, supra*, 24 Cal.3d 357, 367.) In buttressing its holding, the *Zelinski* court pointed out that in *United States* v. *Price* (1965) 383 U.S. 787 [16 L.Ed.2d 267, 86 S.Ct. 1152], our nation's high court had made it clear that a private citizen may act under "color of law" without being an officer of the state and, by so doing, may be held accountable along with officers of the state for acts which state officials are not legally entitled to commit.

The majority in today's decision emphasizes that the *Zelinski* court made a clear-cut differentiation between a private citizen performing a

search of another in vindication of self-interest or the interest of another citizen as contrasted with a search by a private citizen of another citizen that is designed to further a state interest. Thus, the search of the defendant in *Zelinski* by the department store security guards came under the search and seizure proscriptions of the federal and state Constitutions because the security guards sought more than the simple vindication of the merchant's private interest and the exercise of self-help to obtain a return of the stolen merchandise—they sought to further the state interest of bringing to account alleged violators of the law.

In seeking to distinguish the case at bench from the factual situation presented in *Zelinski*, the majority concludes—but erroneously so in my opinion—that private citizen Alig was acting in a purely private capacity and was not utilizing the coercive power of the state to further a state interest. The majority also concludes erroneously that, while the store detectives in *Zelinski* were fulfilling a public function in bringing violators of the law to justice, private citizen Alig in the instant case was acting solely to protect his neighbor's home and not to fulfill any public function. These distinctions which the majority makes I consider to be unfounded and lacking in support from the record or any reasonable inferences therefrom.

I do not consider it reasonable to interpret private citizen Alig's actions as designed only to protect his neighbor's home and thus to bring about the vindication of another citizen's private interest. In my view, private citizen Alig was fulfilling a public function to the same extent as the store detectives in *Zelinski* were fulfilling a public function. Alig was not seeking merely to protect his neighbor's home but to have the minor Bryan apprehended as a law violator. It is of significance that Alig stated, in his testimony without equivocation, that he asked the minor Bryan to wait for the police. Apparently Bryan obeyed this request up to a point, since Alig also testified that, "[b]y the time the sheriffs pulled up, he took off on his bike and they stopped him just across the street."

In my view, private citizen Alig was unquestionably acting "under color of law" and was seeking to further a significant state interest by trying to have the minor Bryan detained until the police could arrive and place him under arrest. It is to be noted that the *Zelinski* court

made the observation that, "[b]y holding defendant for criminal process and searching her, they [the store's security personnel] went beyond their employer's private interests." (*Zelinski, supra*, 24 Cal.3d 357, 367.) Likewise, it can be concluded, with equal justification and validity, that in the case at bench, private citizen Alig went beyond his neighbor's private interest by directing Bryan, the minor, to remain for the police to arrive and place him under arrest.

The majority suggests that it is desirable for ordinary private citizens to be alert to public criminal activities in their own neighborhoods. I agree that such alertness is desirable, but I do not agree that such alertness can validly encompass the vigilante-type activity of private citizens who seek to take the law into their own hands and hold and search suspected law violators. Such vigilante-type activity of private citizens must necessarily activate the doctrine of "private action within the constitutional constraints on state action." (*Zelinski, supra*, 24 Cal.3d 357, 367.)

When a private citizen seeks to restrain and search an alleged law violator for the purpose of bringing the violator to justice through an arrest by police to follow, he should be held to be engaged in illegal conduct which violates the constitutional proscriptions against unreasonable search and seizure. Such illegal conduct of *ordinary private citizens* should be held to pose "a threat to privacy rights of Californians that is comparable to that which may be posed by the unlawful conduct of police officers" (*Zelinski, supra*, 24 Cal.3d 357, 366), to the same extent that the conduct of privately employed security personnel in *Zelinski* was held to pose such a threat.

Far from contravening public policy as the majority suggests, the application of the exclusionary rule to the factual situation of the instant case would promote the public interest by precluding the threat to privacy rights of all Californians and restrain abuses by law enforcement personnel and by private vigilante citizens acting as law enforcement personnel and with the same purpose in mind as that of true law enforcement personnel.

Although not mandated by California's *Zelinski* case and the United States Supreme Court *Price* case, the view I espouse in this dissent is not precluded by either the holdings or the rationale of *Zelinski* or *Price*. On the contrary, it represents a reasonable and logical applica-

tion of the legal principles which produced the actual holdings of *Price* and *Zelinski*.

I would thus reverse the order sustaining the petition alleging burglary.

A petition for a rehearing was denied October 10, 1980, and appellant's petition for a hearing by the Supreme Court was denied November 5, 1980.