[Crim. No. 37195. Second Dist., Div. One. Nov. 26, 1980.]

In re VICTOR F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
VICTOR F., Defendant and Appellant.

**COUNSEL**

Katherine Lerner Lynn, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BAFFA, J.*—

I

On November 15, 1979, a petition was filed by the District Attorney of Los Angeles County, alleging in count I that the minor, Victor F., loitered around a school without lawful purpose in violation of Penal Code section 653g. Count II alleged that the minor attempted to take and carry away a 10-speed bicycle in violation of Penal Code sections 664/484, subdivision (a); both offenses occurring on November 13, 1979.

On November 19, 1979, in a petition filed by the District Attorney of Los Angeles County, it was alleged that the minor, Victor F., stole personal property from K-Mart in violation of Penal Code section 484, subdivision (a), occurring on October 14, 1979.

Deputy public defenders were appointed to represent the minor and he denied the allegations in the respective petitions.

On November 26, 1979, an adjudication hearing was held on the petition filed November 15, 1979. The court denied the minor's motion for judgment of acquittal pursuant to Penal Code section 1118. The court sustained the petition and found the minor to be a person described by Welfare and Institutions Code section 602.

On December 10, 1979, a disposition hearing was held on the November 15, petition. The court ordered that the minor remain a ward of the court pursuant to Welfare and Institutions Code section 602 and ordered the minor placed in the camp community placement program for a period not to exceed six months.

*Assigned by the Chairperson of the Judicial Council.

Later that day, December 10, 1979, an adjudication hearing was held on the petition filed November 19, 1979. The court denied the minor's motion for judgment of acquittal pursuant to Penal Code section 1118 and denied the minor's motion to dismiss the petition in the interest of justice. The court sustained the petition and found the minor to be a person described by Welfare and Institutions Code section 602. The minor waived time for dispositon on this petition. The court ordered that the camp placement ordered for the November 15 petition remain in full force and effect, with the placement on the November 19 petition to run for a consecutive period not to exceed six months.

Appellant appeals from the juvenile court's order of commitment.

## II

*The Petition filed on November 15, 1979.*

On November 13, 1979, Ronald Brown was a physical education teacher at Horace Mann School in Beverly Hills. The school's bicycle rack was in a 40-foot square area, enclosed by a chain link fence which was 30 feet high on the street side and 10 feet high on the school side. One gate, eight feet high and four feet wide, led into the area, and it was locked at 8 each morning with a heavy chain. Early that afternoon Brown noted that the gate was locked.

Twenty minutes later, and after obtaining additional information, he saw a young man whom he identified as the appellant crouching between two bikes in the bike rack area. The appellant appeared to be holding something which Brown described as a blade. The gate was still locked. Brown told the appellant to stay there and he called to another teacher to bring a key to open the gate. The appellant began to climb the fence but as he reached the sidewalk, he was restrained by a school employee and taken to the school office. He did not have with him the object Brown described as a blade, nor was it found on him. Another teacher went out to secure appellant's bicycle, which was on the sidewalk, and brought back a hacksaw to the office.

Brown and the school principal, Mr. Fields, asked the appellant, who was not a student at the school, why he was out of school, and asked for his telephone number. Appellant responded he had no clean clothes to wear to school and he had no telephone. They asked the appellant what he was doing at the school. The appellant replied that he was looking at

bikes. Fields asked why the appellant was in the bike rack area. The appellant answered that he was there to steal a bike. The court overruled counsel's objection that the prosecution did not lay an adequate foundation in that the appellant was not advised of his constitutional rights before being questioned by school personnel acting in a police capacity.

Beverly Hills Police Detective Michael Haigwood arrested the appellant at the school. He advised him of his constitutional rights. The appellant waived his rights and stated that he was at the school to steal a yellow 10-speed bike; he also dictated and signed a statement. Haigwood noticed that the hacksaw which the teacher had found appeared new, and he went to a nearby Thrifty Drug store where he saw similar items. He did not attempt to take any fingerprints from the hacksaw.

John Bayless, a staff psychologist in the Central Juvenile Hall psychiatric clinic, examined the appellant and concluded that he suffered from borderline mental retardation and as a result tended to speak in stereotypes and to give socially approved answers, although he behaved as though these things were not truly known by him. He acknowledged that, based on the facts presented at the hearing, it appeared that the appellant knew what he was doing "step by step."

Sylvia W., appellant's mother, had attempted to teach appellant the difference between right and wrong. She told appellant it was wrong to steal.

### III

*The Petition filed November 19, 1979.*

At approximately 5 p.m. on October 14, 1979, Lawrence Smiley, a store security guard, was on duty in the security department of K-Mart Store at 631 West 3d Street in Los Angeles. He saw two boys in an area of the radio department which was limited to sales personnel. The taller of the two boys, whom he identified as the appellant, he saw lean into an appliance display case and take out a portable radio cassette player. The appellant set the radio down on the floor in the drug aisle, and while the other boy stayed with the radio, the appellant walked up to the center aisle, looked around, and returned to carry the radio to the elevator. Smiley ran upstairs and saw the appellant get out of the elevator, wait until the cashier's back was turned, and carry the radio through the cafeteria out the door to the street.

The security guard stopped the appellant as the other boy went off down the sidewalk. The guard showed his badge and identified himself. He then asked the appellant, "Why did you do it." The court overruled an objection by defense counsel that the appellant's statements were obtained in violation of his constitutional rights in that the security guard did not warn appellant of his constitutional rights, and the guard testified that appellant said he got the radio for the boy he was with so he could swap it for the boy's bicycle. Smiley took the appellant to the security office inside the store and called the police to come and pick him up.

During his testimony, Smiley referred to the apprehension report he had filled out. Although the report was the only report he had filled out concerning the incident, he acknowledged that he had not entered all the important information about the incident in that report. In fact, the report did not include any notes about his questioning or about the appellant intending to trade the radio for a bicycle. On a relevancy basis, the court sustained each of the district attorney's objections to defense counsel's questions concerning Smiley's ability to recall statements made and other facts concerning others of the approximately 45 individuals he had apprehended since the date of the incident.

The appellant's mother, Sylvia W., testified that appellant was five feet one inch tall; that she had taught him the difference between right and wrong and he knew it was wrong to steal things from stores.

## IV

Appellant makes the following contentions and raises the following issues.

1.   The rationale of *People* v. *Zelinski* and that of *Miranda* v. *Arizona* require that the appellant's confession to the security guard, obtained in the absence of the *Miranda* warnings, be suppressed.

2.   The court erred in sustaining the allegation that appellant had committed attempted theft because there is no statute creating such a crime and, in any event, the evidence was insufficient to establish that appellant committed that crime.

3.   The appellant's confession to the school principal and the teacher, obtained in the absence of *Miranda* advisements, were unlawfully

procured and must be suppressed, and his subsequent confession to the police officer was tainted by the first confession and must also be suppressed.

4. The court's restriction of the appellant's cross-examination of Smiley, which was aimed at Smiley's ability to recall facts surrounding the appellant's confession was an abuse of discretion and a denial of the appellant's constitutional rights to due process and cross-examination.

V

Appellant contends the statements made to the security guard, and the school principal and teacher, obtained in the absence of *Miranda* warnings, must be suppressed. We do not agree with these contentions.[1]

Appellant argues the security guard and the school officials were acting under color of law as defined in *People* v. *Zelinski* (1979) 24 Cal.3d 357, 368 [155 Cal.Rptr. 575, 594 P.2d 1000], in that they continued the detention of the appellant in order to deliver him to a police officer for arrest. Further, that their function in this regard was to aid law enforcement, and by interrogating the appellant to obtain statements for use in a criminal prosecution, they utilized the coercive power of the state to further a state interest, rather than merely to serve their own interests.

This argument is without merit. The law is clear, the security guard, school principal and teacher, are not officials whose interrogation of a criminal suspect must be preceded by an admonition of constitutional rights under *Miranda* v. *Arizona* (1966) 348 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *Dyas* v. *Superior Court* (1974) 11 Cal.3d 628, 634 [114 Cal.Rptr. 114, 522 P.2d 674].) The court in *People* v. *Wright* (1967) 249 Cal.App.2d 692, 694-695 [57 Cal.Rptr. 781], sets forth the following fundamental test, to wit: "It does not matter that a particular employee's duties may be confined to

---

[1]We are aware of the *Deborah C.* case, (1980) 111 Cal.App.3d 289 [168 Cal.Rptr. 556], but the facts of that case are clearly distinguishable from our instant case. Initially, the court in that case was dealing with an illegal search and secondarily an arrest followed by interrogation by security guards. We are not dealing with those issues in our instant case, rather we are concerned about an investigation detention by the security guard during which appellant made exculpatory statements.

the protection of persons and property on his employer's premises or that his employer may be the state, a political subdivision thereof or a local entity. What does matter is whether he is employed by an agency of government, federal, state or local, whose primary mission is to enforce the law." ■ Clearly, neither the security guard, the school principal, or teachers' primary mission was to enforce the law in our instant case. The court in *People v. Zelinski, supra,* 24 Cal.3d at page 362, specifically states: "Store detectives and security guards are retained primarily to protect their employer's interest in property. They have no more powers to enforce the law than other private persons. . . ." The same reasoning is applicable pertaining to school principals and teachers.

Since we expressly find the appellant's confession to the school principal and the teacher was not tainted, his subsequent confession to the police officer was also not tainted and should not be suppressed.

## VI

■ Appellant further contends that there is no crime of "attempted theft" because that specific crime is not defined by statute and, even assuming arguendo the existence of such a crime, there was insufficient evidence in the instant case to demonstrate that appellant committed such a crime. We disagree.

Penal Code section 484, subdivision (a) defines the crime of theft as feloniously stealing the personal property of another. If the theft is less than $200, it is petty rather than grand theft. Penal Code section 664 provides, in part, as follows: "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempts, as follows: . . ." The question of perpetration versus attempt has been the subject of numerous cases. Appellant cites *People v. Buffum* (1953) 40 Cal.2d 709, 718 [256 P.2d 317], holding that: "Preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature. . . ." Respondent, however, cites *People v. Keefer* (1973) 35 Cal.App.3d 156, 164 [110 Cal.Rptr. 597], and *People v. Anderson* (1979) 97 Cal.App. 3d 419, 424 [158 Cal.Rptr. 727], wherein those courts indicate that where the design to commit the crime is clearly shown, slight acts in

furtherance of the design will constitute an attempt. In *People* v. *Staples* (1970) 6 Cal.App.3d 61, 67 [85 Cal.Rptr. 589], it was held that the overt act sufficient to bring about an attempt need not be the last proximate or ultimate step towards commission of the substantive crime. It is sufficient if it was a step in a direct movement towards that end after the perpetrations were made.

We find, after reviewing the evidence and the reasonable inferences to be drawn therefrom, it is established not only that perpetrations had been made for commission of the crime but an appreciable fragment of the crime had taken place. Appellant had climbed the locked fence or enclosure; with a hacksaw in his possession; at a school wherein he had no legitimate business to steal a bicycle. He was interrupted by a teacher, but the crime had progressed to the point that it was reasonable to infer that it would have been completed except for the intervention of a circumstance independent of the will of appellant, his apprehension by Mr. Brown.

We conclude that, in light of Penal Code section 664, and the criteria set forth in the *Buffum, Keefer, Anderson,* and *Staples* cases, *supra,* the evidence and reasonable inferences to be drawn therefrom was sufficient to establish an attempted theft.

## VII

■ Appellant further argues the court's restriction of the appellant's cross-examination of Smiley was an abuse of discretion and a denial of appellant's constitutional rights to due process and cross-examination. There is no merit in these contentions.

Although wide latitude exists for cross-examination of a witness, the witness cannot be cross-examined about immaterial or irrelevant matters.

In *Gallaher* v. *Superior Court* (1980) 103 Cal.App.3d 666, 671 [162 Cal.Rptr. 389], the court states: "'It is well established that the scope of proper cross-examination may extend to the *whole transaction* of which the witness has testified, or it may be employed to elicit *any matter which may tend to overcome, qualify or explain the testimony given by a witness on his direct examination.*' . . ."

The court further states on page 672: "We construe the foregoing criteria as providing, at least ordinarily, that when a prosecution witness testifies to facts tending to establish the guilt of one criminally accused, that witness may be cross-examined on *all* relevant and material matters preceding, concurring with, or following the criminal event, within his knowledge and reasonably related to the issue of guilt or innocence."

We find the trial court properly exercised its discretion in foreclosing appellant from cross-examining Lawrence Smiley regarding his recollection about the apprehension of suspects other than appellant. Clearly, appellant was entitled to test Mr. Smiley's recollection on his arrest of appellant, and the court never foreclosed appellant from doing so. However, the appellant's attempt to test Mr. Smiley's recollection regarding other apprehensions of different suspects was totally irrelevant, since Mr. Smiley's inability to specifically recall those incidents would not have any tendency in reason to demonstrate that he did not have the ability to recall the incident involving appellant. Indeed, Mr. Smiley prepared reports on the people he apprehended, including appellant, and a review of a written report would refresh his recollection. The record further reflects that Mr. Smiley had an independent recollection of the incident involving appellant.

The judgment (orders of 11-19-79 and 12-10-79) is affirmed.

Spencer, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 26, 1980, and appellant's petition for a hearing by the Supreme Court was denied January 22, 1981.