FAINER, P. J.
I dissent.
There is no evidence in the record supporting a holding or a finding that the electronic game was actually visible or in plain view to the security manager after it had been placed in the carry-out bag given to the defendánt. The plain-view rule of People v. Zelinski (1979) 24 Cal.3d 357 [155 Cal.Rptr. 575, 594 P.2d 1000] and the language of Penal Code section 490.5 prohibit a seizure of items in a closed container by a security guard. (Id. 24 Cal.3d at p. 364.) I interpret the language of Zelinski to include within this restriction a store bag given to defendant-suspect even though he or she may not have a reasonable expectation of privacy in its contents under the rule recently announced in People v. Fick (1980) 107 Cal.App.3d 892 [166 Cal.Rptr. 106]. The search rights of security guards are more restricted than those of police officers. (People v. Zelinski, supra, 24 Cal.3d 357, 363, 365.) The security guard who holds the defendant until the arrival of the police cannot search for goods not in plain view. (Id. at p. 364.) Penal Code section 490.5 has been modified effective January 1, 1981, to make the distinction between the peace officer and the merchant or security guard clear on this point by providing that after a merchant or his or her security guard makes a citizen’s arrest of a person suspected of shoplifting, the peace officer who .accepts custody of a person.. .may, subsequent to the arrest, search the person arrested and his or her immediate possessipns for any item or items alleged to have been taken.” (Pen. Code, § 490.5, subd. (e)(4).) Subdivision (e)(3) of this code section permits the merchant and presumably his security guard to examine any item in plain view for purposes of ascertaining ownership.
The security manager in our instant case could not see the game at the time of the citizen’s arrest and it was not in plain view simply because he saw it placed in the store bag.
The search by the security officer cannot be held to be proper because it was made after defendant allegedly consented to the search as the trial court found no consent. There is no evidence supporting a finding that defendant voluntarily or impliedly consented to the security manager’s opening the bag. The question of whether there is a consent is one of law, a legal conclusion. (Krause, Cal. Search and Seizure Practice (Cont. Ed. Bar 1977) § 2.85.) The question of whether there is an implied consent (People v. Gibbs (1971) 16 Cal.App.3d 758, 764 [94 *Supp. 25 Cal.Rptr. 458]; People v. Smith (1962) 210 Cal.App.2d 252, 256-257 [26 Cal.Rptr. 620]) or whether the consent is voluntary (People v. James (1977) 19 Cal.3d 99, 107 [137 Cal.Rptr. 447, 561 P.2d 1135]) are questions of fact. Consent may be manifested by actions as well as words. (Nerell v. Superior Court (1971) 20 Cal.App.3d 593, 599 [97 Cal.Rptr. 702]; People v. Harrington (1970) 2 Cal.3d 991, 998 [88 Cal.Rptr. 161, 471 P.2d 961]; People v. Guyette (1964) 231 Cal.App. 2d 460, 465-466 [41 Cal.Rptr. 875].) We are bound to uphold the findings of fact of the trial court if there is substantial evidence to support any finding. (People v. Lawlor (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) I emphasize that the trial court found no consent and inferentially found no voluntary consent.
Examining the record, the security manager simply demanded that the defendant turn over the game. This is a far cry from a request to search the bag. There was no voluntary consent, nor was there an implied consent when the defendant submitted to the demand to turn the game over to the security manager.
The trial court properly determined that the bag was unlawfully searched and the game unlawfully seized under the Zelinski rules.
I would affirm.