Argued and submitted November 26, 1985, resubmitted In Banc July 9, reversed and remanded for new trial November 12, 1986, reconsideration denied March 13, petition for review allowed April 7, 1987 (303 Or 261)

**STATE OF OREGON,**
*Respondent,*

*v.*

**KAMALA JEAN OKEKE,**
*Appellant.*

(DA 280069; CA A35902)

728 P2d 872

Raymond F. Thomas, Portland, argued the cause for appellant. With him on the brief was Royce, Swanson & Thomas, Portland.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

NEWMAN, J.

Richardson, J., dissenting.

Rossman, J., dissenting.

**NEWMAN, J.**

Defendant appeals her conviction for carrying a concealed weapon. ORS 166.240. She challenges the court's denial of her pretrial motion to suppress evidence, arguing that the search of her purse and seizure of a pistol from it by an employe of a detoxification center violated her right against unreasonable searches and seizures under Article I, section 9, of the Oregon Constitution. We reverse.

Defendant was one of three passengers in a car stopped by a Multnomah County Deputy Sheriff, because the driver had committed a traffic violation. The officer detected the odor of alcohol on the driver's breath and administered field sobriety tests. The officer also detected alcohol on defendant's breath and, when she failed to follow his instructions, he placed her under a civil hold for intoxication. The officer took her to the Hooper Detoxification Center (Center) and turned her over to the night supervisor.

As part of the regular intake procedure, Center personnel ask certain medical questions and tell admittees that they must give up their shoes, belts and valuables. They place valuables in a drop box in the admitting area and also perform a cursory search for any medication which may affect the admittee's condition. The night supervisor testified at the suppression hearing that defendant answered questions adequately and that he had no reason to believe that she was in medical danger. His only recollection about her condition was that she was "very emotionally upset." He searched her purse and discovered a small pistol wrapped in a purple cloth. The Center released her shortly thereafter, and the police arrested her for carrying a concealed weapon.

At trial, defendant moved to suppress the pistol. She argued that the civil hold was illegal and, in the alternative, that even if her detention was legal, the search was not. The court held that the officer acted within his discretion in holding defendant. As for the search, it made the following findings:

"1)  Defendant was not under arrest for a crime;

"2)  There was no probable cause or reasonable suspicion that defendant committed any crime;

"3)  There was no emergency;

"4) That this search could not have been performed by a police officer;

"5) There is insufficient evidence of 'state action' so as to make this search unconstitutional."

On the basis of finding 5, it denied the motion.

Defendant does not argue that the court erred when it concluded that the civil hold was legal, but that the search violated her rights under Article I, section 9. In response, the state argues that there was no "state action" and, therefore, no constitutional violation. Alternatively, it argues that, even if there was state action, the search was permissible.

■ Article I, section 9,[1] is a limit on "state action," and it does not apply to searches or seizures by private persons acting on their own volition. *State of Oregon v. Olsen,* 212 Or 191, 317 P2d 938 (1957); *State v. Padilla,* 9 Or App 162, 496 P2d 256 (1972). When, however, private parties act at the behest of the state or under the mantle of its authority, their actions are subject to constitutional limitations. *State v. Lowry,* 37 Or App 641, 588, P2d 623 (1978), *rev den* 285 Or 195 (1979).

"No hard and fast rule has been established for determining when official involvement is sufficient to bring the exclusionary rule into effect. Each case must be evaluated on its own facts." *State v. Lowry, supra,* 37 Or App at 652.

■ The state argues that, because "there was no police involvement in the search, the exclusionary rule does not apply." The argument is not persuasive. Defendant is not complaining of some wrong arising out of her voluntary association with the Center, but rather of actions that the Center took without her consent pursuant to statutory authority. She need not show that the actions of the Center are state action for all purposes, but only for the search of her

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

purse.[2] Although the police were not directly involved in the search, there was sufficient "official involvement" in it to constitute state action. A police officer took defendant into custody and transported her to the Center pursuant to ORS 426.460(1).[3] She was not free to leave, nor did she consent to the search. In detaining, questioning and searching defendant, Center personnel were implementing the legislative directive of ORS 426.460(2)[4] and were exercising authority that the statute gave them. In conducting the search of defendant's purse, they were acting under authority of the state and were, therefore, bringing governmental compulsion to bear on her. They had authority over defendant similar to what the police would have had if the police had searched her purse. Under the circumstances here, the search was state action.

Other courts have reached the same conclusion under analogous circumstances. In *People v. Zelinski,* 24 Cal 3d 357, 594 P2d 1000 (1979), the California Supreme Court held that, when private security personnel conduct a search or seizure while engaged in a statutorily authorized citizen's arrest and detention of a person, they are state actors. The court stated

---

[2] On this record, we do not need to decide whether the Center is an entity whose actions are state action for all purposes. Accordingly, the issue here is not the same as the issue in the "state action" cases that the state relies upon: *Rendell-Baker v. Kohn,* 457 US 830, 102 S Ct 2764, 73 L Ed 2d 418 (1982) (whether an employe of a private institution for maladjusted youth would be entitled to bring an action under 42 USC § 1983 for wrongful discharge); *Blum v. Yaretsky,* 457 US 991, 102 S Ct 2777, 73 L Ed 2d 534 (1982) (whether the discharge of a patient who had voluntarily sought treatment at a private nursing facility would involve state action).

[3] ORS 426.460(1) provides:

"Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. However, if the person is incapacitated, the health of the person appears to be in immediate danger, or the police have reasonable cause to believe the person is dangerous to self or to any other person, the person shall be taken by the police to an appropriate treatment facility. A person shall be deemed incapacitated when in the opinion of the police officer or director of the treatment facility the person is unable to make a rational decision as to acceptance of assistance."

[4] ORS 426.460(2) provides:

"The director of the treatment facility shall determine whether a person shall be admitted as a patient, or referred to another treatment facility or denied referral or admission. If the person is incapacitated or the health of the person appears to be in immediate danger, or if the director has reasonable cause to believe the person is dangerous to self or to any other person, the person must be admitted. The person shall be discharged within 48 hours unless the person has applied for voluntary admission to the treatment facility."

that the search was an "integral part of the exercise of sovereignty allowed by the state to private citizens" and that "[i]n arresting the offender, the store employees were utilizing the coercive power of the state to further a state interest."

"Persons so acting should be subject to the constitutional proscriptions that secure an individual's right to privacy, for their actions are taken pursuant to statutory authority to promote a state interest in bringing offenders to public accounting. Unrestrained, such action would subvert state authority in defiance of its established limits. It would destroy the protection those carefully defined limits were intended to afford to everyone, the guilty and innocent alike. It would afford de facto authorizations for searches and seizures incident to arrests or detentions made by private individuals that even peace officers are not authorized to make. Accordingly, we hold that * * * the state involvement is sufficient for the court to enforce the proper exercise of that power by excluding the fruits of illegal abuse thereof." 24 Cal 3d at 367. (Footnotes and citations omitted.)

Similarly, federal courts have found state action in searches by an airline employe, *United States v. Davis,* 482 F2d 893 (9th Cir 1973), and by employes of a private corporation which was under contract with the government to manage the Sinai peacekeeping force. *Dobyns v. E-Systems, Inc.,* 667 F2d 1219 (5th Cir 1982).

Because we find that there was state action, we must next decide whether the search violated the prohibition in Article I, section 9, against "unreasonable" searches and seizures. In a line of cases beginning with *State v. Newman,* 292 Or 216, 637 P2d 143 (1981), the Supreme Court and this court have attempted to define the permissible scope of searches incident to a civil detoxification hold under ORS 426.460. In *Newman,* the court held that, in a nonemergency situation, a police officer's search, without a warrant, of the purse of an intoxicated person for identification at the time the person is taken into custody for transportation to a treatment or holding facility is "unreasonable" and violates Article I, section 9. The officer did not arrest the defendant at any time before the search or act on probable cause. The court stated:

"The purpose of a purse or handbag is to carry personal things. An individual's expectation of privacy in a purse is

probably greater than in any other property except the clothing worn by a person. We do not think it was necessary for the police officer to know the name of the person that he was going to transport to the treatment or holding facility." 292 Or at 222.

As the court stated, "[t]he test of each step in the police procedure [in dealing with an intoxicated person in a non-criminal setting] is reasonableness." 292 Or at 224. Because the search was "unnecessary," the court held it to be "unreasonable."

In *State v. Lawrence,* 58 Or App 423, 648 P2d 1332, *rev den* 293 Or 801 (1982), and *State v. Keyes,* 61 Or App 434, 657 P2d 724 (1983), we applied *Newman* to strike down searches incident to civil holds. In *Lawrence,* the police took the defendant into civil custody because he was intoxicated and transported him to jail because the alcoholic treatment facility was full. At the jail, the defendant was put through the booking process, which was the same process as for persons charged with crime. The police inventoried the defendant's property and found LSD in a closed container in his jacket. We held that the police could not open a closed container seized from the intoxicated defendant "when the purpose of doing so is to detect evidence of crime rather than to aid the person." 58 Or App at 426. Moreover, we stated:

"Nonetheless, defendant was taken into custody in a noncriminal, nonemergency situation, as was the defendant in *State v. Newman,* 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982). In *Newman,* the court held that a search of the defendant's purse for identification at the scene of the stop was unreasonable, because it was not necessary to know her identify in order to take her to the holding facility as authorized by ORS 426.460. That reasoning strongly suggests that there was no necessity here for the police to search defendant's person or property at the scene, other than for their own safety if that was a concern. However, it is not that search, but the later one at the jail for the purpose of inventorying his belongings, that is challenged here.

"* * * * *

"* * * [T]he inventory process in noncriminal, non-emergency cases should be less intrusive than that considered reasonable in criminal cases." 58 Or App at 428, 431.

In *State v. Keyes, supra,* the police took the visibly

intoxicated defendant into custody and to the booking facility because they believed that the city's treatment facility would not accept him because of the late hour. Before placing the defendant in the patrol car, the police patted him down and found no weapon but did find cocaine in his sports jacket. We held that a search of the defendant's clothing was unreasonable when the initial "patdown" indicated that he was not carrying a weapon. We explained:

"In *State v. Lawrence, supra,* 58 Or App at 430, we pointed out that what may be reasonable police procedure with respect to a person under criminal arrest may not be so with respect to one under a 'civil hold.' The purpose of ORS 426.460 is to protect intoxicated persons. In dicta in *Lawrence* we said:

'[I]t would seem reasonable for an officer taking an intoxicated person into custody to conduct a limited "patdown search" for weapons to ensure the safety of the officer, if the officer has a legitimate concern.' 58 Or App at 430.

"We adhere to that view. However, that was not the kind of search conducted in the present case. There was no difference between this search and one conducted pursuant to a criminal arrest. The interior and exterior pockets of defendant's clothing were searched for contraband as well as weapons. Given the Supreme Court's reasoning in *Newman* that the search of defendant's purse at the scene of the stop was unreasonable, because it was unnecessary to know her identify in order to take her to a holding facility, we similarly hold in this case that it was unnecessary to determine at the time of the stop whether defendant possessed contraband and to search the interior of defendant's pockets for a weapon when a 'patdown' furnished no basis to believe there was one." 61 Or App at 437. (Citation and footnote omitted.)

*See also State v. Perry,* 298 Or 21, 688 P2d 827 (1984).

The state argues that this case is distinguishable from those cited above, because the search here had a legitimate purpose: namely, to find out if defendant had ingested any drugs which might affect treatment. It argues:

"It was necessary to conduct a search rather than just asking defendant if she had taken any drugs because: (1) she had been taken into custody because of her intoxication and, therefore, the answers she might have given would not be reliable; and

(2) she might have lied about the ingestion of illegal substances. Clearly, a search of defendant's purse for this purpose was reasonable."

■ ■  We disagree. "[A] person is entitled to a greater expectation of privacy in a civil hold situation than he is in a criminal case." *State v. Perry, supra,* 298 Or at 28. Here, there was no probable cause or even reasonable suspicion before the search that defendant had committed any crime. A search of a civil hold detainee is reasonable only if it is necessary to effectuate the purpose of ORS 426.460 to protect the intoxicated person. *State v. Lawrence, supra,* 58 Or App at 430. Although the search of defendant's purse was consonant with defendant's civil hold status, that is, it was for treatment purposes, it was not necessary to accomplish that purpose. There was no emergency. Nothing in defendant's symptoms suggested that she needed treatment beyond detention. Moreover, there was no evidence that defendant was unwilling or unable to answer questions concerning other drugs that she might have been using. Assuming that there may be circumstances in which it would be necessary to search a detainee's purse for treatment purposes, the circumstances were not present here. A contrary result would be inconsistent with the greater expectation of privacy associated with the civil hold status. The search here was unnecessary and, therefore, unreasonable. The court erred in denying the motion to suppress.[5]

Reversed and remanded for a new trial.

**RICHARDSON, J.,** dissenting.

I do not agree that, under the circumstances in this case, the action by the employe of the treatment facility which lead to discovery of the gun in defendant's purse was state

---

[5] The state relies on *State v. Marsh,* 1 Or App 351, 462 P2d 459 (1969), where the defendant was taken into custody under ORS 426.215(1) and transported to the police emergency hospital. We upheld the seizure of a packaged substance from the defendant as reasonably related to diagnosing or treating his apparent mental or physical condition. We said that the prompt identification of the substance seized might be the key to effective emergency treatment. The defendant actually needed treatment (he was not released from hospital confinement for 20 days) and was emotionally disturbed to an extent that it was reasonable to believe that he could not be trusted to answer correctly questions concerning that treatment. On the other hand, defendant here did not receive treatment at the Center and was released only minutes after the search.

action comprehended by Article 1, section 9, of the Oregon Constitution. However, because I disagree with the second conclusion of the majority that the "official action" constituted an unreasonable search, I need not further address the first error of the majority. Assuming then, for the purposes of discussion, that the action complained of was "state action," I conclude it was not unreasonable, as that concept is used in *State v. Newman,* 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982).

The majority, after reciting the holdings and some of the reasoning of certain cases involving searches incident to "civil hold" detention of intoxicated persons, concludes that the search was unreasonable. *See State v. Perry,* 298 Or 21, 688 P2d 827 (1984); *State v. Newman, supra; State v. Keyes,* 61 Or App 434, 657 P2d 724 (1983); *State v. Lawrence,* 58 Or App 423, 648 P2d 1332, *rev den* 293 Or 801 (1982). The majority rationale, based on its assessment of the evidence, is reflected in this passage:

> "* * * '[A] person is entitled to a greater expectation of privacy in a civil hold situation than he is in a criminal case.' *State v. Perry, supra,* 298 Or at 28. Here, there was no probable cause or even reasonable suspicion before the search that defendant had committed any crime. A search of a civil hold detainee is reasonable only if it is necessary to effectuate the purpose of ORS 426.460 to protect the intoxicated person. *State v. Lawrence, supra,* 58 Or App at 430. Although the search of defendant's purse was consonant with defendant's civil hold status, that is, it was for treatment purposes, it was not necessary to accomplish that purpose. There was no emergency. Nothing in defendant's symptoms suggested that she needed treatment beyond detention. Moreover, there was no evidence that defendant was unwilling or unable to answer questions concerning other drugs that she might have been using. Assuming that there may be circumstances in which it would be necessary to search a detainee's purse for treatment purposes, the circumstances were not present here. A contrary result would be inconsistent with the greater expectation of privacy associated with the civil hold status. The search here was unnecessary and, therefore, unreasonable. * * *" 82 Or App at 401. (Brackets theirs.)

In analyzing the circumstances of the "official action" in this case to determine its reasonableness, a few salient facts must be recalled. The police officers who initially

took defendant into protective custody had transported her to a treatment facility and had left her there by the time the search took place. There were no police officers involved in the search. The night supervisor of the treatment facility conducted the search. When a person is brought to a treatment facility by the police pursuant to ORS 426.460, the director of the treatment facility and the staff have certain responsibilities:

"The director of the treatment facility shall determine whether a person shall be admitted as a patient, or referred to another treatment facility or denied referral or admission. If the person is incapacitated or the health of the person appears to be in immediate danger, or if the director has reasonable cause to believe the person is dangerous to self or to any other person, the person must be admitted. The person shall be discharged within 48 hours unless the person has applied for voluntary admission to the treatment facility." ORS 426.460(2).

Under that statute, the facility's staff must make a number of medically related decisions. The first is whether the person should be admitted. That requires an assessment of the person's condition to determine if the police officers' initial conclusion is correct and if the person needs some type of treatment that the facility offers. Defendant was admitted to the facility by the night supervisor. As the trial court found:

"Intake supervisor at Hooper, observing defendant's emotional behavior, testified that alcohol might explain that behavior and felt it advisable to observe the defendant and release her if no further problems developed."

The court held that the civil hold was not illegal, and defendant does not challenge that ruling on appeal.

Second, the staff must decide if the person should be referred to another treatment facility. That requires a medical assessment of the person's conditions and a preliminary diagnosis. The night intake supervisor testified that at the time of admission, there is a itemization of all the person's possessions "in case any client should state that they came in with a considerable amount of money we want to verify that." He also said he checked to see if the person had any drugs.

"* * * [T]hat is merely for the basis of we want to make sure that there is no health reason. Maybe alcohol and some

pills mixed could be very fatal, and, if so, we want to send them to a hospital so they can be monitored closer."

It is clear that the examination of the person's possessions is for two reasonable purposes: one, the inventory function to protect the property of the person who is detained and, two, the necessity to have information to make a required medical diagnosis. It is also clear that the search was not a criminal investigation masquerading as an inventory or medical investigation. The officer who brought defendant to the treatment facility testified that he had left her there and was unaware that the facility would conduct any type of search.

The circumstances of this case are different *vis-a-vis* the reasonableness of the search in *State v. Newman, supra,* and *State v. Lawrence, supra.* In those cases the police officers took the defendants into custody under ORS 426.460 and conducted the searches before the persons were taken to a treatment facility. In each case the court held that the necessities of getting the person to a treatment facility did not reasonably justify the extensive search that produced the incriminating evidence. When a police officer is faced with the necessity of taking a person into custody pursuant to ORS 426.460, he has a limited function: to get the person to the treatment facility. He has no authority or obligation to make a determination of the person's condition beyond that dictated by ORS 426.260(1). A search designed to assist in other types of determinations is simply not a relevant action by the police officer in the absence of some emergency which requires an immediate search.

The majority's response to the state's argument that the search was necessary to make a proper assessment of defendant's condition and to make a determination of the appropriate course of action is:

"* * * There was no emergency. Nothing in defendant's symptoms suggested that she needed treatment beyond detention. Moreover, there was no evidence that defendant was unwilling or unable to answer questions concerning other drugs that she might have been using. * * *" 82 Or App at 401.

The fact that there was no emergency, which I take to mean that the defendant was not convulsing in extremis on the floor, perhaps is relevant in analyzing a search by a police officer before he brings a person to the treatment facility.

However, the staff of the facility is required to make a series of medical decisions and should not be limited in the search for relevant information by being able to respond only to an emergency.[1] It also may be true that nothing in this record suggest to the majority that defendant needed treatment beyond detention. I, like the majority, may feel somewhat confident in making that assessment at this juncture in the proceedings. However, I, like the majority, do not have the training, experience or responsibility to make that decision under the circumstances that exist when a person is brought to the treatment facility. The facility staff is faced with the responsiblity for making a responsible decision as to what needs to be done. A responsible and competent approach would reasonably include acquiring all the relevant information available. As the supervisor testified, it was important to determine if the person might have ingested drugs with alcohol because some combinations could be "very fatal." Faced with that ominous potential, a search of the places a person would ordinarily carry drugs is not unreasonable. The facility staff member was not searching for evidence of a crime but was carrying out an assigned responsibility. It would *not* have been responsible for the staff to perform its duties in the fashion that this court's opinion dictates.

The majority notes, perhaps with tongue in cheek, that there is no evidence that defendant was unwilling or unable to answer questions about possible drug use. The evidence was that she was quite uncooperative with the police officers. Presumably, she was the same with the staff at the facility. The trial court included in its recitation of facts that defendant was exhibiting emotional behavior which the intake supervisor concluded could be attributed to alcohol. A patient who seeks medical advice from her physician may be candid about drug use and cooperative in disclosing such information; however, a person exhibiting signs of intoxication who is brought involuntarily to the facility by the police may not exhibit the same degree of cooperation. It is reasonable for the treatment facility staff not to depend on the intake interview as the sole means of getting relevant and

---

[1] A person convulsing on the floor of the facility from drug and alcohol overdose may happily cry: "Give me liberty *and* give me death."

important drug use information. That is so as a general proposition *and* in this particular situation.

The majority takes some refuge in a statement from *State v. Perry, supra,* that

"* * * a person is entitled to a greater expectation of privacy in a civil hold situation than he is in a criminal case. * * *" 298 Or at 28.

That statement, phrased in terms of degrees, offers little assistance in analyzing a search, other than to suggest that the reasons for an intrusion into a privacy enclave must be closely scrutinized in a civil hold situation. It also may indicate that the same reasons that justify a search in a criminal arrest situation are not readily transferrable to a noncriminal detention. *Perry,* however, does indicate that a limited inventory of the property of a person detained under ORS 426.460 is appropriate. In *Perry,* the police opened a closed suitcase taken into custody with the intoxicated defendant, who was detained on a civil hold. The court noted that, as it held in *State v. Keller,* 265 Or 622, 510 P2d 568 (1973), the necessities of inventory do not allow opening a closed suitcase in a criminal arrest. It follows, the court concluded, that the closed suitcase could not be opened in the process of a civil hold inventory. The majority in this case does not suggest that defendant's purse is a "closed container" in the same category as the suitcase involved in *Perry.* I do not read *Perry* as saying that the treatment facility, in compliance with the property caretaking function associated with a treatment related detention, could not look into defendant's purse to determine the type of property that she had for safekeeping. A purse serves a function similar to the pockets in clothing for carrying valuables, currency and medications. The responsibilities of the facility to safeguard the property of a detainee and to collect information for the necessary medical decisions justified the incursion into defendant's purse. The pistol which was the basis of the criminal charge was discovered during this necessary and reasonable search. The trial court's denial of the motion to suppress evidence of the search was correct and the conviction should be affirmed. The majority disagrees, which leaves me with a dissenting view.

Warden, Van Hoomissen and Rossman, JJ., join in this dissent.

**ROSSMAN, J.,** dissenting.

Although I agree with Judge Richardson's conclusion that the "search" of defendant's purse was reasonable, I write separately, because I strongly disagree with the majority's conclusion that the search constituted state action. Because the exclusionary rule is a limit on state action only, it has no application to searches or seizures by private persons acting on their own volition. *State of Oregon v. Olsen,* 212 Or 191, 317 P2d 938 (1957); *State v. Padilla,* 9 Or App 162, 496 P2d 256 (1972); *State v. Bryan,* 1 Or App 15, 457 P2d 661 (1969). Accordingly, we need not—and should not—reach the question of whether the search was reasonable under the circumstances.

The search of defendant's purse was conducted by an employe of the Hooper Detoxification Center, which is operated by a private nonprofit corporation. There were no law enforcement officers present, and defendant does not contend that the individual who conducted the search is an employe or an agent of the state or that the search was conducted at the request of the deputy sheriff who escorted her to the center. In fact, there is no evidence whatever that the search was anything other than a routine measure to create a record of defendant's property and to determine whether she had taken any drugs or medication that might endanger her life. That was treatment-oriented activity, not police work.

The majority concludes, nevertheless, that the search was state action, because the employe who conducted it had authority over defendant pursuant to state law, which was "similar" to police authority. The majority strains very hard to create this strange symbiotic relationship, but the decisions that it relies on in support of its conclusion are inapposite. The majority persists in going south, when the law is clearly pointing to the north. In *People v. Zelinski,* 24 Cal3d 357, 155 Cal Rptr 575, 594 P2d 1000 (1979), for example, the court held that the challenged search, which was conducted by a private security guard looking for stolen property, was state action, because it was conducted "pursuant to statutory authority to promote a *state interest* in bringing offenders to public accounting." (Emphasis supplied.) Similarly, all the federal decisions that the majority relies on, *Dobyns v. E-Systems, Inc.,* 667 F2d 1219 (5th Cir 1982), and *United States v. Davis,*

482 F2d 893 (9th Cir 1973), involved searches conducted to further *state* interests. Here, the search was performed for the benefit of the individual searched. That is an important difference.

Simply because the center is licensed and regulated by the state does not mean that its conduct somehow becomes state conduct. *Blum v. Yaretsky,* 457 US 991, 1004, 102 S Ct 2777, 73 L Ed 2d 534 (1982); *Rendell-Baker v. Kohn,* 457 US 830, 841-42, 102 S Ct 2764, 73 L Ed 2d 418 (1982); *Jackson v. Metropolitan Edison Co.,* 419 US 345, 350, 95 S Ct 449, 42 L Ed 2d 477 (1974). There must be a sufficiently close nexus between the state and the regulated entity so that the actions of the latter may fairly be treated as those of the state. *Jackson v. Metropolitan Edison Co., supra,* 419 US at 351. That relationship is not present here.

Defendant was searched incident to her treatment for alcohol abuse at a private detoxification center authorized to provide care to intoxicated persons as an alternative to jail. The search was not conducted by state personnel, but by a private citizen whose sole concerns were the health of defendant and the security of her possessions. There is no evidence that the search was conducted pursuant to any governmental guidelines or that it was the practice of the center's employes to turn over the fruits of their searches to the police pursuant to any agreement.

State action is not established simply because the center works closely with law enforcement agencies. There is no evidence in this record that the center performed its routine searches for the benefit or at the behest of those agencies. Simply because the persons who took defendant to the center happened to be police officers, does not mean that the center's personnel suddenly and somehow became police officers — any more than they would have become taxi cab drivers had defendant arrived by taxi, even though the owners of taxicabs are subject to state regulation. I would hold that the search of this defendant did not constitute state action. Big Brother was not bearing down.

Accordingly, I respectfully dissent.

Richardson, Warden and Van Hoomissen, JJ., join in this dissent.