Argued and submitted October 10, affirmed December 31, 1986, reconsideration denied February 13, petition for review denied March 17, 1987 (303 Or 74)

# STATE OF OREGON,
*Respondent,*

*v.*

# RONDA MYLESA JENSEN,
*Appellant.*

## (M-67282; CA A40486)

730 P2d 1282

Laura Graser, Portland, argued the cause and filed the brief for appellant.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Rossman, Judges.

ROSSMAN, J.

Newman, J., concurring.

## ROSSMAN, J.

Defendant was convicted of theft in the second degree. ORS 164.045. A Mervyn's department store security agent observed her place a pair of pants in a diaper bag and leave the store without paying for them. On appeal, she contends that the agent violated her right against unreasonable searches under Article I, section 9, of the Oregon Constitution by observing her in the privacy of a fitting room and that the trial court therefore erred when it denied her pretrial motion to suppress evidence derived from the agent's observations. Without reaching the question of whether the search was unreasonable, the trial court denied her motion to suppress on the ground that the actions complained of were those of a private person and not "state action." We affirm.

The facts are stipulated. On April 2, 1986, defendant was observed entering a fitting room in the store's ready to wear department by two security agents. The door to the fitting room had slats, through which one agent watched defendant remove her own pants, try on a pair of the store's pants, remove those, fold them and place them in the diaper bag. Both agents then followed defendant and her companion out of the store, where they detained defendant and took the merchandise from her companion.[1] Defendant was thereupon released and arrested later at the store's request.

■ Article I, section 9, provides, in pertinent part:

"No law shall violate the rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

It is axiomatic that the provision is a limit on government authority only, and not on the actions of private persons acting on their own behalf. *State of Oregon v. Olsen,* 212 Or 191, 317 P2d 938 (1957); *State v. Okeke,* 82 Or App 393, 728 P2d 872 (1986). However, the provision does apply when private persons act at the behest of the state or under the mantel of its authority. *State v. Okeke, supra.* The determinative factor is "the extent of the official involvement in the

---

[1] Defendant does not challenge the constitutionality of any of the security agents' actions other than their observation of her while she was in the fitting room.

total enterprise." *State v. Lowry,* 37 Or App 641, 652, 588 P2d 623, *rev den* 285 Or 195 (1979).

Defendant contends that, although there was no official police involvement in the search, it constituted state action, because the security agent was performing a delegated police function in furtherance of a state interest and pursuant to statutory authority. The statute to which she refers is ORS 131.655,[2] which provides that a merchant or a merchant's employe (or a peace officer) who has probable cause for believing that a person has shoplifted may detain and interrogate the person in a reasonable manner and for a reasonable time without incurring criminal or civil liability.

Defendant relies on *People v. Zelinski,* 24 Cal 3d 357, 155 Cal Rptr 575, 594 P2d 1000 (1979), in which the California Supreme Court held that, when private security personnel conduct a search or seizure while engaged in a statutorily authorized citizen's arrest and detention, the California constitutional proscriptions against unreasonable searches and seizures are applicable. The store detectives who were involved in that case possessed essentially the same powers and immunities under California law as the security agents involved in this case do under Oregon law.[3] However, we believe that the California case is distinguishable.

First, Article I, section 13, of the California Constitution,[4] the basis of California's exclusionary rule, does not

---

[2] ORS 131.655 provides:

"(1) Notwithstanding any other provision of law, a peace officer, merchant or merchant's employe who has probable cause for believing that a person has committed theft of property of a store or other mercantile establishment may detain and interrogate the person in regard thereto in a reasonable manner and for a reasonable time.

"(2) If a peace officer, merchant or merchant's employe, with probable cause for believing that a person has committed theft of property of a store or other mercantile establishment, detains and interrogates the person in regard thereto, and the person thereafter brings against the peace officer, merchant or merchant's employe any civil or criminal action based upon the detention and interrogation, such probable cause shall be a defense to the action, if the detention and interrogation were done in a reasonable manner and for a reasonable time."

[3] *People v. Zelinski, supra,* apparently was abrogated with the enactment of Article I, section 28(d), of the California Constitution, which generally prohibits the exclusion under California law of relevant evidence in criminal proceedings.

[4] Article I, section 13, of the California Constitution, provides, in pertinent part:

"The right of the people to be secure in their persons, houses, papers and

implicitly apply exclusively to state action, as does Article I, section 9, of the Oregon Constitution. Second, in *Zelinski* the search by the store detectives was conducted while they were engaged in a statutorily authorized citizen's arrest. Here, the agent who observed defendant in the fitting room was not acting in accordance with any statutory authority. Although ORS 131.655 authorizes store security agents to detain and interrogate suspects under certain circumstances, it stops short of authorizing, in any form, a predetention search, and defendant cites no other statutory authority which authorizes one.[5]

■ ■    This case is similarly distinguishable from *State v. Okeke, supra,* in which we held that a search performed by an employe of a private detoxification center incident to treatment for alcohol abuse is state action. In *Okeke,* the search was conducted after the defendant had been taken into custody and transported to the center by a police officer and while she was being held there without her consent, in accordance with ORS 426.460. Although a private citizen performed the search, she did so incident to a statutorily authorized detention. Here, in contrast, the security agent, in detecting the crime, as distinct from detaining the offender, was not acting pursuant to any state statute.[6] Simply put,

---

effects against unreasonable seizures and searches may not be violated * * *."

Before *Zelinski,* the provision had been applied "only where it served the purpose of the exclusionary rule in restraining abuses by the police." 24 Cal 3d at 365.

[5] The California court itself recognized the limited scope of its holding.

"When a merchant exercises his common law privilege (now embodied in [California] Pen. Code, § 490.5), to detain a person suspected of taking merchandise, the merchant is exercising a purely private right and self-interested right to protect his property. His conduct does not assume the color of law until he formally arrests the suspected thief * * *." 24 Cal 3d at 368 n 10.

Defendant also cites several federal cases in which security agents have been held to be acting "under the color of state law" in civil suits for false arrest brought under 42 USC § 1983. They are also inapposite.

[6] We need not decide whether a search conducted by private security personnel of a person who is being detained in accordance with ORS 131.655 is state action. It suffices to say that any nexus that does exist between the state and private security personnel is far too attenuated to render them state actors for all purposes. *See Jackson v. Metropolitan Edison Co.,* 419 US 345, 351, 95 S Ct 449, 42 L Ed 2d 477 (1974). Private security personnel are not licensed by the State of Oregon, and defendant does not assert that the security agents involved here were trained or in any way aided by the police. It is insufficient, without more, that their actions may further an important state interest, although it may be, as defendant asserts, that public policy

there was no official involvement whatsoever in this case. There being no basis for the application of Article I, section 9, of the Oregon Constitution, the trial court correctly denied defendant's motion to suppress.

Affirmed.[7]

**NEWMAN, J.,** concurring.

I concur. The majority finds that this case is distinguishable from *State v. Okeke,* 82 Or App 393, 728 P2d 872 (1986). I agree. In *Okeke,* a treatment center employe searched the defendant whom the police had taken into custody and transported to the center pursuant to ORS 426.460(2). It mandates:

> "The director of the treatment facility *shall determine* whether a person shall be admitted as a patient, or referred to another treatment facility or denied referral or admission. If the person is incapacitated or the health of the person appears to be in immediate danger, or if the director has reasonable cause to believe the person is dangerous to self or to any other person, the person *must be* admitted. The person shall be discharged within 48 hours unless the person has applied for voluntary admission to the treatment facility." (Emphasis supplied.)

The defendant moved to suppress the pistol that the center employe seized from her purse when he was carrying out the legislative directive. We found that there was "official involvement" in the search and a violation of Article I, section 9.

> "Although the police were not directly involved in the search, there was sufficient 'official involvement' in it to constitute state action. A police officer took defendant into custody and transported her to the Center pursuant to ORS 426.460(1). She was not free to leave, nor did she consent to the search. In detaining, questioning and searching defendant, Center personnel were implementing the legislative directive of ORS 426.460(2) and were exercising authority that the statute gave them. In conducting the search of defendant's purse, they were acting under authority of the state and were, therefore, bringing governmental compulsion to bear on her. They had

---

dictates that they be more stringently regulated than they currently are. However, that duty belongs, in the first instance, to the legislature and not to the courts.

[7] Defendant's other assignments have no merit.

authority over defendant similar to what the police would have had if the police had searched her purse." 82 Or App at 397. (Footnotes omitted.)

Here, the facts are materially different. The defendant had voluntarily entered the store. The store security agent observed her through slats in the front door of a fitting room. Defendant moved to suppress the evidence of theft that the security officer obtained from that observation. She did *not* object to the subsequent detention or interrogation, which occurred after the security agent followed her out of the store, detained her and her companion and seized the merchandise. ORS 131.655 authorizes, but does not require, a store employe who has probable cause for believing that a defendant has committed theft of property of a store to detain and interrogate that person, but says nothing about a "search" that precedes the detention and interrogation. Accordingly, even assuming that the observation through the slats in the fitting room door was a "search" within the meaning of Article I, section 9, the security agent did not undertake that search while implementing a statutory directive. Contrary to *Okeke,* there was no "official involvement" here and, therefore, no violation of Article I, section 9.